IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Case No. 26-cv-00296-NYW

SERGIO MARTINEZ ESCOBAR,

    Petitioner,

v.

JUAN BALTAZAR, in his official capacity;
ROBERT HAGAN, in his official capacity;
KRISTI NOEM, in her official capacity;
TODD LYONS, in his official capacity; and
PAM BONDI, in her official capacity;

    Respondents.

_____

**MEMORANDUM OPINION AND ORDER**
_____

This matter is before the Court on the Verified Petition for Writ of Habeas Corpus ("Petition"), [Doc. 1], and Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction ("Motion for TRO"), [Doc. 2]. Respondents filed a consolidated response in opposition, [Doc. 21], and Petitioner has not sought leave to reply. For the reasons set forth below, the Petition is **GRANTED in part**.

BACKGROUND

Petitioner Sergio Martinez Escobar ("Petitioner" or "Mr. Martinez Escobar") is a noncitizen who has resided in the United States for "nearly twenty years." [Doc. 1 at ¶¶ 1, 40]. Petitioner is presently detained by U.S. Immigration and Customs Enforcement ("ICE") and has not received a bond hearing. [*Id.*]. The Government purports to detain him under 8 U.S.C. § 1225(b). *See* [Doc. 13 at 2–3]. Petitioner disputes the

Government's interpretation of § 1225(b) and contends that he is actually detained under 8 U.S.C. § 1226(a), which would entitle him to a bond hearing. [Doc. 1 at ¶¶ 34–39, 44–46]. But because § 1225(b)(2)(A) provides for mandatory detention, he has no opportunity for release on bond while the Government considers him detained under this provision. *See* [*id.* at ¶¶ 44–46].

In the Petition, Mr. Martinez Escobar brings six claims challenging the lawfulness of Respondents' decision to detain him without a bond hearing:

- First, a statutory claim that that Respondents' erroneous application of § 1225(b) and § 1226(a) violates § 1226(a) ("Count One"), [*id.* at ¶¶ 43–46];
- Second, a regulatory claim that Respondents' denial of a bond hearing violates § 1226(a)'s implementing regulations ("Count Two"), [*id.* at ¶¶ 47–50];
- Third, a claim under the Administrative Procedure Act, ("APA") ("Count Three"), [*id.* at ¶¶ 51–54];
- Fourth, a procedural due process claim under the Fifth Amendment ("Count Four"), [*id.* at ¶¶ 55–60];
- Fifth, a claim seeking to enforce a classwide judgment in *Maldonado Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025), Dkt. No. 94, [Doc. 1 at ¶¶ 61–66 ("Count Five")]; *see also Maldonado Bautista v. Santacruz*, --- F. Supp. 3d ---, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (amended summary-judgment order), *appeal docketed*, No. 25-7958 (9th Cir. Dec. 19, 2025);
- Sixth, a substantive due process claim under the Fifth Amendment ("Count Six"), [Doc. 1 at ¶¶ 67–70].

Petitioner seeks, among other things, a writ of habeas corpus ordering that he either be released from custody or granted a bond hearing within seven days. [Doc. 1 at 21–22]. He also asks the Court to order various additional procedural protections, such as placing the burden of proof on Respondents at any bond hearing, enjoining Respondents from "unilaterally imposing additional forms of custody like 24/7 GPS monitoring," and enjoining Respondents from invoking the "automatic stay provision" in 8 C.F.R. § 1003.19(i)(2) if bond is granted. [*Id.* at 22].

This matter is fully briefed and ripe for disposition. No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## ANALYSIS

Petitioner's claims primarily turn on whether Respondents may detain him pursuant to § 1225(b)(2)(A), such that he is not entitled to a bond hearing under § 1226(a). The Court summarizes the statutory framework before turning to the Parties' arguments.

### I.   Statutory Framework

Sections 1225 and 1226 govern detention of noncitizens prior to a final order of removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1226 "sets forth 'the default rule' for detaining noncitizens 'already present in the United States.'" *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at *5 (E.D. Va. Sept. 30, 2025) (quoting *Jennings*, 583 U.S. at 303). This section permits, but does not require, the Attorney General to detain noncitizens pending removal proceedings, subject to certain exceptions not applicable here. *Jennings*, 583 U.S. at 303; 8 U.S.C. § 1226(a)(1)–(2) (the Attorney General "*may* continue to detain" or "*may* release" the noncitizen (emphasis added)). Section 1226(a) thus establishes a discretionary framework for the detention of noncitizens pending removal proceedings.

Section 1225(b) "supplement[s] § 1226's detention scheme." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)). Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission." *Jennings*, 583 U.S. at 297. This section provides, in relevant part, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained" pending removal proceedings. 8 U.S.C. § 1225(b)(2)(A)

4

...
...

(emphasis added).[1]  Under § 1225(a)(1), an "applicant for admission" is

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters).

Absent an exception for urgent humanitarian reasons not implicated in this case, "detention under § 1225(b)(2) is considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citing *Jennings*, 583 U.S. at 297).

## II. Application to Petitioner's Statutory Claim

The Court's analysis begins with Count One, the statutory claim.  Respondents argue that § 1225(b)(2)(A) applies and requires Petitioner's detention, so he is not entitled to a bond hearing.  *See* [Doc. 13].  This Court, following the clear weight of persuasive authority, has already rejected Respondents' position.  *See Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *5 (D. Colo. Oct. 22, 2025) ("[F]ederal courts have overwhelmingly rejected Respondents' 'broad interpretation of section 1225(b)(2).'" (collecting cases)).[2]  In *Loa Caballero*, this Court reviewed a similar habeas

---

[1] Under 8 U.S.C. § 1225(b)(1), "certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum."  *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. Oct. 3, 2025), *appeal docketed*, No. 25-2152 (1st Cir. Dec. 3, 2025); *see also* 8 U.S.C. § 1225(b)(1)(A)(i) (directing an immigration officer to "order [a person deemed inadmissible] removed from the United States without further hearing or review unless [the person] indicates either an intention to apply for asylum . . . or a fear of persecution").  Respondents do not argue that Petitioner is detained pursuant to § 1225(b)(1), *see* [Doc. 11], so the Court does not substantively address detention under this subsection.

[2] In addition to this Court's ruling in *Loa Caballero*, a majority of other judges in this District have concluded that § 1225(b)(2)(A) does not apply to noncitizens similarly situated to Petitioner, who have been present in the country for some time and are not actively "seeking admission."  *See, e.g.*, *Mendoza Gutierrez v. Baltasar*, No. 25-cv-02720-RMR,

petition filed by a noncitizen who had resided in the United States for nearly 20 years before he was detained by ICE.  *See id.* at *1.  Like Mr. Martinez Escobar, the Government did not provide the petitioner in *Loa Caballero* with a bond hearing because it asserted that § 1225 mandated his detention.  *See id*.  The Court disagreed, emphasizing that § 1225(b)(2)(A) only provides for mandatory detention of noncitizens "seeking admission" to the country.  *Id.* at *6.  "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States."  *Id.*  Thus, noncitizens who are merely "present"—and have been for "years upon years" without obtaining legal status—are not "seeking admission" under § 1225(b)(2)(A).  *Id.* (quoting *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025)).  Interpreting § 1225(b)(2)(A) to mandate detention for all "applicants for admission" would render the "seeking admission" language superfluous.  *Id.* at *7.  The Court concluded that both the plain text of § 1225 and applicable canons of statutory interpretation demonstrated that the petitioner in *Loa Caballero* was detained under § 1226, not § 1225.  *See id.* at *5–8.  The Court has since reaffirmed its ruling in *Loa Caballero* in several other similar habeas cases.  *See, e.g.*, *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227 (D. Colo. Jan. 6, 2026).

Respondents acknowledge the issue presented in this case "is not materially

---

2025 WL 2962908 (D. Colo. Oct. 17, 2024) (Rodriguez, J.), *appeal docketed*, No. 25-1460 (10th Cir. Dec. 16, 2025); *Moya Pineda v. Baltasar*, No. 25-cv-02955-GPG, 2025 WL 3516291 (D. Colo. Oct. 20, 2025) (Gallagher, J.); *Nava Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025) (Sweeney, J.); *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019 (D. Colo. Dec. 18, 2025) (Brimmer, C.J.); *Aleman Hernandez v. Baltazar*, No. 25-cv-03688-SKC-SBP, 2025 WL 3718159 (D. Colo. Dec. 23, 2025) (Crews, J.); *Garcia Abanil v. Baltazar*, No. 25-cv-04029-WJM-STV, 2026 WL 100587 (D. Colo. Jan. 14, 2026) (Martinez, J.).

6

different" than *Loa Cabellero*, *see* [Doc. 13 at 2], and provide no persuasive reason for the Court to depart from the conclusion it reached in that case. Nor has the Tenth Circuit yet addressed the issue. And although Respondents preserve their arguments to the contrary, they concede that the Court's ruling in *Loa Caballero* will lead the Court to the same conclusion here.

Accordingly, as in *Loa Caballero* and *Briales-Zuniga*, the Court concludes that § 1225(b)(2)(A) does not authorize Respondents' detention of Petitioner. The "default rule" of discretionary detention under § 1226(a) therefore applies. *See, e.g.*, *Quispe-Ardiles*, 2025 WL 2783800, at *5, *7. And because Respondents have failed to provide Mr. Martinez Escobar with a bond hearing or any other individualized custody determination, his continued detention violates § 1226(a).

### III. Due Process Claims

Petitioner's constitutional claims spring from his statutory arguments. He argues that his erroneous detention under § 1225(b)(2)(A) violates his substantive and procedural due process rights. [Doc. 1 at ¶¶ 55–60, 67–70]. Respondents do not dispute that noncitizens detained under § 1226(a) are entitled to an individualized custody determination. *See* [Doc. 13].

Having determined that § 1226(a) governs Petitioner's detention, the Court concludes that his detention without a bond hearing violates due process. The Court concurs with the numerous other district courts that have held that denying a bond hearing to a noncitizen detained under § 1226(a) violates the noncitizen's due process rights. *See, e.g., Garcia Cortes*, 2025 WL 2652880, at *4; *Garcia Abanil v. Baltazar*, --- F. Supp. 3d ----, 2026 WL 100587, at *6–7 (D. Colo. Jan. 14, 2026); *Lopez-Campos*, 797 F. Supp.

3d at 784–85. And because Mr. Martinez Escobar is detained under § 1226(a), at a minimum "the process due to him is that which is afforded under [§ 1226(a)]." *Lopez-Campos*, 797 F. Supp. 3d at 785. As explained above, that process is an individualized bond determination. *See, e.g.*, *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) (describing the process owed under § 1226 as "an individualized bond hearing before an [immigration judge]"); *Hyppolite v. Noem*, --- F. Supp. 3d ----, 2025 WL 2829511, at *8 (E.D.N.Y. Oct. 6, 2025) ("[Section] 1226(a) requires an individualized bond determination . . . .").

## IV. Appropriate Remedy

The Court turns to Mr. Martinez Escobar's various requests for relief, which are primarily addressed in his Motion for TRO. *See* [Doc. 2 at 16–23].

### A. Immediate Release

Petitioner first requests immediate release instead of a bond hearing. [*Id.* at 16–18]. But § 1226(a) "does not require release—it provides DHS the discretion to grant an alien release on bond." *Nava Hernandez*, 2025 WL 2996643, at *8. Thus, at this juncture, the Court will follow its usual practice of affording Respondents an opportunity to hold a bond hearing. If they fail to do so, as Petitioner fears, [Doc. 2 at 18], the Court will require his release, *see, e.g.*, *Loa Caballero*, 2025 WL 2977650, at *9 (ordering respondents to provide detainee with a bond hearing within seven days, and ordering detainee's immediate release if respondents failed to comply); *Briales-Zuniga*, 2026 WL 35227, at *4 (same).

### B.     Whether this Court Should Conduct the Bond Hearing

Petitioner next asks the Court to hold the bond hearing itself rather than delegating the matter to an immigration judge. [Doc. 2 at 20–21]. As Respondents point out, though, § 1226(a) provides that the bond determination should be made by the agency, not a federal district court. [Doc. 13 at 4]; 8 U.S.C. § 1226(a) ("[T]he Attorney General . . . may release the alien on . . . bond."). This Court—again following the clear weight of persuasive authority—has held that a bond hearing before an immigration judge is sufficient to vindicate the procedural protections afforded by § 1226(a). *See, e.g.*, *Loa Caballero*, 2025 WL 2977650, at *9; *Briales-Zuniga*, 2026 WL 35227, at *4. As in those cases, the Court finds that an immigration judge is better suited than this Court to conduct the hearing and consider whether Mr. Martinez Escobar poses a flight risk or danger to the community.

The Court acknowledges that some courts outside of this District have elected to hold the custody hearing themselves, but Petitioner points to no cases from this District that have done so. *See* [Doc. 2 at 21 (collecting cases)]. Nor is this Court aware of any such cases. *See De La Cruz v. Baltazar*, No. 26-cv-00360-PAB, 2026 WL 439217, at *4 (D. Colo. Feb. 17, 2026) (ordering that the custody hearing be conducted by an immigration judge and observing that the petitioner had provided no cases from this District in which the court held its own custody hearing). And, at this juncture, this Court does not find that the circumstances presented by this case justify its intervention to hold its own custody hearing. The Court will therefore order an immigration judge to conduct Petitioner's bond hearing.

### C. Burden of Proof

Third, Petitioner argues that, at the bond hearing, Respondents should bear the burden of demonstrating by clear and convincing evidence that his continued detention is justified. [Doc. 2 at 21]. He argues that this burden of proof should also extend to lesser forms of custody, such as continuous GPS monitoring. [*Id.*]. Petitioner's arguments on this point are insufficiently developed.[3] *Compare* [*id.* at 7–15 (covering statutory interpretation of § 1225(b) in detail)], *with* [*id.* at 22–23 (devoting one paragraph to the burden-shifting issue and citing no binding authority); Doc. 1 (providing no analysis of the burden-shifting issue)]. But Respondents fail to address the issue at all. *See* [Doc. 13]. There is nothing in their response to indicate that Respondents even oppose Petitioner's request that they bear the burden of proof at his bond hearing.

Without the benefit of substantive briefing from the Parties, the Court will not undertake its own analysis at this time. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."). Instead, the Court continues to concur with the other cases in this District that have required the Government to bear the burden of proof at a § 1226(a) bond hearing where, as here, the petitioner was initially erroneously detained under § 1225. *See Diaz Lopez v. Noem*, No. 25-cv-04089-NYW, 2026 WL 206220, at *5

---

[3] Petitioner is correct that many persuasive authorities have imposed the burden of proof on the Government in § 1226(a) bond hearings. [Doc. 2 at 21 (collecting cases)]. But the due process analysis is fact-specific, *Jennings*, 583 U.S. at 314, not a "one size fits all proposition," *Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir. 2022). And Petitioner fails to address the three factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which courts in this Circuit use to assess "what process is constitutionally due," *J.B. v. Washington Cnty.*, 127 F.3d 919, 924–25 (10th Cir. 1997); *see also, e.g., L.G. v. Choate*, 744 F. Supp. 3d 1172, 1180–81 (D. Colo. 2024) (using *Mathews* factors to determine what process is due in § 1226(a) bond hearing after a prolonged detention).

(D. Colo. Jan. 27, 2025) (this Court taking the same approach in absence of substantive briefing on burden-shifting issue); *see also, e.g.*, *Garcia Abanil*, 2026 WL 100587, at *8 ("[T]he weight of authority in this District is clear:  it is the Government's burden to justify a noncitizen's continued detention at a bond hearing." (cleaned up) (collecting cases)). *But see De La Cruz*, 2026 WL 439217, at *4 (declining to shift burden to the Government in a similar case).  The Court also concurs with the decisions concluding that "the clear and convincing standard that generally applies to civil detention where liberty is at stake is appropriate here as well."  *Cervantez Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, slip op. at 9 (D. Colo. Oct. 31, 2025), ECF No. 21 (quotation omitted); *see also, e.g.*, *Garcia Abanil*, 2026 WL 100587, at *8 (finding clear and convincing standard appropriate where noncitizen's "liberty interest hangs in the balance"); *Mendoza Gutierrez v. Baltasar*, No. 25-cv-02720-RMR, 2025 WL 2962908, at *10 (D. Colo. Oct. 17, 2024) (imposing clear and convincing standard on Government), *appeal docketed*, No. 25-1460 (10th Cir. Dec. 16, 2025); *cf. Addington v. Texas*, 441 U.S. 418, 432–33 (1979) (ordering "clear and convincing" standard in civil commitment proceedings and observing that the Supreme Court had imposed a comparable burden in "deportation" and "denaturalization" cases).

The Court will not, however, order that the same burden of proof applies to GPS monitoring or other conditions of release at this time.  Although these conditions are restraints on liberty that count as "custody" for habeas and due process purposes, *see, e.g.*, *Batz Barreno v. Baltasar*, --- F. Supp. 3d ----, 2026 WL 120253, at *2 (D. Colo. Jan. 15, 2026), there is a clear difference in the degree of liberty restriction imposed by detention versus location monitoring or periodic check-ins.  The bedrock precedents that support a clear and convincing standard all involve actual detention or confinement.  *See,*

11

*e.g.*, *Addington*, 441 U.S. 425 (involuntary commitment to a mental hospital); *United States v. Salerno*, 481 U.S. 739 (1987) (pretrial detention). And the Supreme Court has repeatedly recognized that Congress's plenary power over immigration permits it to make rules as to noncitizens that would be "unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). Petitioner submits no authority or explanation for why less restrictive "alternatives to detention" should be placed on the same footing as actual detention in this context. *See* [Doc. 2 at 21]. The Court need not make his arguments for him. *Davis*, 622 F. App'x at 759. To the extent the Government seeks to continue to detain Mr. Martinez Escobar, it must demonstrate by clear and convincing evidence that he presents a flight risk or danger to the community. But if the Government seeks alternatives to detention or conditions on release at the bond hearing, the Court will leave it to the immigration judge—not Respondents—to determine what burden (and what conditions) should apply. *Cf. Garcia Cortes v. Guadian*, No. 26-cv-00294-CNS, 2026 WL 265688, at *2 (D. Colo. Feb. 2, 2026).

### D.    Ability to Pay

Petitioner asks the Court to require the immigration judge to consider his ability to pay when setting an amount of bond. [Doc. 2 at 22]. He contends that this requirement flows from unspecified "[d]ue process protections." [*Id.*]. The Court acknowledges that other courts, in other cases, have sometimes ordered immigration judges to consider a petitioner's ability to pay. *See* [*id.* (collecting cases)]. But Petitioner does not explain why due process requires such an order in this case. *See De La Cruz*, 2026 WL 439217, at *4 (declining to order immigration judge to consider ability to pay). He makes no attempt to connect the deprivation in this case—ICE's decision to deny him a bond hearing—to

his request that this Court impose restrictions on the immigration judge's bond calculation. Nor does he address the usual procedure for determining bond in a § 1226(a) hearing or why such procedure would be constitutionally inadequate. Again, the Court need not make arguments on Petitioner's behalf, *Davis*, 622 F. App'x at 759, and it does not have sufficient argument or legal authority to prescribe any factors that the immigration judge must consider in rendering her decision.

### E. Automatic Stay Provision and Unilateral Conditions on Release

Finally, Petitioner urges the Court to enjoin Respondents from invoking the automatic stay provision or unilaterally imposing conditions on his release without authorization from the immigration judge. [Doc. 2 at 22–23]. To be sure, other courts in this District have taken issue with these practices. *See Merchan-Pacheo v. Noem*, No. 25-cv-03860-SBP, 2026 WL 88526, at *14–16 (D. Colo. Jan. 12, 2026) (concluding that the automatic stay provision violated the petitioner's procedural due process rights); *Batz Barreno*, 2026 WL 120253, at *1–3 (ordering ICE to release petitioner from ankle monitor and other conditions of release that were not imposed by immigration judge). But there is no indication that ICE intends to take any of these actions in this case. Nor has ICE invoked the automatic stay provision or unilaterally imposed conditions on release in any of the Court's other recent immigration cases. Thus, the Court finds that Petitioner has not "clearly established" that the requested injunctive relief is necessary at this time. *See De La Cruz*, 2026 WL 439217, at *5 (citing *Goldammer v. Fay*, 326 F.2d 268, 270 (10th Cir. 1964) ("Injunction is a drastic remedy to be exercised with caution, and should be granted only in cases where the necessity therefore is clearly established.")). Consistent with its usual practice, however, the Court will order the Parties to submit a Joint Status

13

Report after the bond hearing, apprising the Court of the status of the matter—including but not limited to whether Respondents have invoked the automatic stay provision—to allow the Court to determine whether any further proceedings are necessary.

Accordingly, Respondents are **ORDERED** to provide Petitioner with a bond hearing before an immigration judge no later than March 3, 2026. At the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified. **If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, he must be immediately released from detention.** On or before March 10, 2026, the Parties shall file a joint status report concerning (1) the results of any bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from custody; (2) whether Respondents have invoked the automatic stay provision as to Petitioner; and (3) whether any additional proceedings in this matter are required.

Having granted Mr. Martinez Escobar relief on Counts One, Four, and Six, the Court does not reach his other claims at this time. And because Petitioner's Motion for TRO seeks substantially the same relief as what the Court has already granted, *see* [Doc. 2 at 23–24], the Motion for TRO is respectfully **DENIED as moot**, *see Loa Caballero*, 2025 WL 2977650, at *9 (denying motion for temporary restraining order as moot after granting petitioner "identical" relief on the merits).

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) The Verified Petition for Writ of Habeas Corpus [Doc. 1] is **GRANTED in part** and **DENIED in part** as set forth herein;

(2) Respondents shall provide Petitioner a bond hearing no later than March 3, 2026. At the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified. **If Respondents to not do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention**;

(3) On or before March 10, 2026, the Parties shall file a joint status report concerning (1) the results of any bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from custody; (2) whether Respondents have invoked the automatic stay provision as to Petitioner; and (3) whether any additional proceedings in this matter are required; and

(4) Petitioner's Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. 2] is **DENIED as moot**.

DATED: February 24, 2026

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

15